KATHERINE M. YOUNGS, APPELLANT, V. DANIEL POTTER ET AL., APPELLEES.

467 N.W.2d 49

Filed March 22, 1991.   No. 88-823.

Michael G. Connery and Gregory S. Heier, of Kutak Rock & Campbell, for appellant.

Donald D. Schneider for appellees Potter.

David D. Ernst, of Gaines, Mullen, Pansing & Hogan, for appellee Youngs.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

WHITE, J.

This is an appeal from a directed verdict in favor of defendant Robert Youngs and a jury verdict in favor of defendants Daniel Potter and William Potter. After a motion for judgment notwithstanding the verdict was overruled, the plaintiff, Katherine M. Youngs, appealed.

At approximately 7:30 p.m. on October 22, 1985, the plaintiff was a passenger in a car driven by her son, Robert Youngs, which car was being driven west on Highway 92 in Butler County. About 3.3 miles west of Rising City, the car, which was traveling at 55 miles per hour, collided with the rear end of a farm vehicle driven by defendant Daniel Potter, which vehicle was also traveling west. The farm vehicle was owned by Daniel Potter's father, defendant William Potter.

Daniel Potter testified that as he approached the highway from the field, with his tractor pulling a grain wagon, he could see a set of headlights (Youngs' car) approaching from the east, about one-half to three-fourths mile away. He did not wait for

the car, but pulled out onto the highway, accelerating from 0 to 5 miles per hour. Just prior to the accident, the farm vehicle was traveling 12 to 15 miles per hour.

Robert Youngs was driving with the car's cruise control set at 55 miles per hour. The windshield was clear, and he had on his low-beam headlights. The farm vehicle had two amber lights on the top rear of the tractor cab, which lights flashed on and off. The wagon did not have lights on the sides or on the rear, but did have a slow-moving vehicle sign affixed on the rear.

Plaintiff was awake immediately prior to the accident and did not see the tractor or farm vehicle, nor did she see the flashing yellow lights or the slow-moving vehicle sign. She gave no warning to Robert Youngs, and made no criticism of his driving when she testified at trial.

Daniel Potter had no view to the rear because the outside rearview mirror on the driver's side was out of adjustment from vibration of the tractor earlier in the day.

The north side of the highway was level ground, and Daniel Potter testified that he had in the past driven the farm vehicle on the shoulder, but did not on this date because with no view to the rear, he knew it would be hazardous to pull off to the side to let cars pass and then try to pull back onto the highway.

The state trooper who investigated the scene said that as he approached from the east he could see only the left amber light and that the grain wagon or the milo obscured the right amber light. He stated that the wagon was filled with grain on the night of the accident. As he neared the farm vehicle from the rear, he said, he lost sight of the light because it was no longer visible over the top of the wagon. The trooper testified that Robert Youngs told him on the night of the accident that Robert Youngs saw the trailer, that as he got closer he saw it was not moving and was without lights, and that he then swerved to his left and lost control.

Harold Warner was driving east on Highway 92 at the time of the accident and witnessed it. He said at one-half mile away he could see the flashing yellow lights from the rear of the tractor reflecting off an object behind it. Warner saw the Youngs' vehicle's headlights come over a rise behind the farm vehicle and then disappear from view. He said he saw at least one

headlight from the Youngs' vehicle move out into the left lane and then swing back in toward the tractor-trailer. Then he saw the Youngs' automobile skid across the lane of traffic following the collision.

An orthopedic surgeon, Dr. Richard Cimpl, testified that he saw plaintiff each day during her treatment at the Columbus hospital and that she told him she was a passenger in the front seat of a car that was attempting to pass some type of farm vehicle pulling a wagon, but since another car was coming, they could not pass and had to go back into their own lane. It was as they reentered their own lane that they hit the farm trailer from behind.

The plaintiff's expert witness, Dr. Ted Sokol, said his examination indicated that the Youngs' vehicle was left of the centerline, and as it came back into the westbound lane it struck the Potter trailer.

Plaintiff, 63 at the time of the accident, sustained a severely fractured left leg, a torn rotator cuff in her right arm, a severely lacerated face, and a bruised chest. She has had three complex operations on her leg and has been unable to return to work.

The plaintiff assigns as error: (1) the overruling of plaintiff's motion for directed verdict against the Potters and the submitting of the issue of the Potters' negligence to a jury, (2) the overruling of the motions for judgment notwithstanding the verdicts in favor of defendants Potter and defendant Youngs, (3) the receiving into evidence of still photographs from an accident reconstruction project, (4) the directing of a verdict for Robert Youngs, (5) the discussing with the jury of Robert Youngs' dismissal, and (6) the admitting of testimony of plaintiff's physician.

We initially observe the following: There is no complaint that the court erred in instructing the jury. The trial court determined as a matter of law that the plaintiff was not contributorily negligent. There is no cross-appeal, and, thus, in our analysis of the correctness of the trial court's ruling in favor of the Potters, any negligence as a matter of law, however slight, proximately causing or contributing to the plaintiff's injuries and damages would require a directed verdict in favor of the plaintiff and a reversal and remand for new trial against

the Potters.

There is evidence that Daniel Potter, in the operation of the farm tractor-trailer, (1) operated the tractor without adequate rearview mirrors when the trailer was so constructed or loaded as to prevent the driver from obtaining an unobstructed view of the rear and (2) failed to have appropriate lights and signs.

The Potters admitted that they operated the farm vehicle in violation of two Nebraska statutes: (1) Neb. Rev. Stat. § 39-6,124 (Reissue 1988), which requires the driver of a motor vehicle which is constructed or loaded so that the driver's view to the rear is obstructed to have his or her motor vehicle equipped with right and left outside mirrors which reflect a view of the highway for at least 200 feet to the rear of the vehicle, and (2) Neb. Rev. Stat. § 39-6,138(3) (Reissue 1984), which requires that farm tractors driven on state highways after sunset and at other times when there is insufficient light must be equipped with headlights and with a rear red light which is visible from at least 500 feet to the rear of the tractor.

The rule in Nebraska is that violation of traffic safety statutes "does not constitute negligence in and of itself, but is merely evidence of negligence." *Chlopek v. Schmall*, 224 Neb. 78, 83, 396 N.W.2d 103, 107 (1986); *Hartman v. Brady*, 201 Neb. 558, 270 N.W.2d 909 (1978). It must also be determined whether any such negligence was the proximate cause of the collision, and that determination is left to the jury. *Raben v. Dittenber*, 230 Neb. 822, 434 N.W.2d 11 (1989).

The plaintiff's motion for a directed verdict was overruled, and the issues were submitted to the jury. " '[O]ur review [of the overruling of a motion for directed verdict] is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can only draw but one conclusion from the evidence . . . .' " *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 298, 436 N.W.2d 151, 159 (1989); *Stoco, Inc. v. Madison's, Inc.*, 235 Neb. 305, 454 N.W.2d 692 (1990). The trial court here was correct because reasonable minds could differ as to the proximate cause of the collision.

When presented with the evidence, the jury returned a verdict for the Potters. "A jury verdict may not be set aside unless clearly wrong, and it is sufficient if there is any evidence

presented to the jury upon which it could find for the successful party." *Commerce Sav. Scottsbluff, supra* at 307, 436 N.W.2d at 164; *Bell v. Williams Care Center*, 226 Neb. 1, 409 N.W.2d 294 (1987). "It is for the jury, as trier of the facts, to resolve conflicts in the evidence and to determine the weight and credibility to be given to the testimony of the witnesses." *Chadron Energy Corp. v. First Nat. Bank*, 236 Neb. 173, 182, 459 N.W.2d 718, 727 (1990); *Raben, supra.* Nothing in the record supports a finding that the jury's verdict is clearly wrong. We affirm the jury's decision.

As to the plaintiff's son, a different analysis is required, since by the terms of the Nebraska automobile guest statute, the negligence of the host driver toward the guest must be gross. See Neb. Rev. Stat. § 39-6,191 (Reissue 1988). "Gross negligence within the meaning of the guest statute is great or excessive negligence, or negligence in a very high degree. It indicates the absence of even slight care in the performance of a duty." *Carlson v. Waddle*, 223 Neb. 671, 674, 392 N.W.2d 777, 779 (1986); *Teegerstrom v. H. J. Jeffries Truck Line*, 216 Neb. 917, 346 N.W.2d 411 (1984). Thus, plaintiff would not be entitled to a directed verdict against Robert Youngs unless he could be found to be grossly negligent as a matter of law.

Plaintiff told the doctor that her son was attempting to pass the tractor-trailer at the time of the collision. It can be inferred from her testimony and that of the only witness to the accident who was not a party to the lawsuit, Warner, that Robert Youngs believed he could safely pass the tractor-trailer, but when he saw the Warner vehicle approaching, he quickly pulled back into the right-hand lane, hitting the tractor-trailer. We have held that gross negligence may be established if there is "a persistence in negligence heedless of the consequences . . . ." *Liston v. Bradshaw*, 202 Neb. 272, 280, 275 N.W.2d 59, 63 (1979). Robert Youngs' momentary distraction and failure to maintain reasonable control and keep a proper lookout, even if determined to be the proximate cause of the accident, cannot be defined as gross negligence, as required under the guest statute. See *Davis v. Landis Outboard Motor Co.*, 179 Neb. 391, 138 N.W.2d 474 (1965).

"A trial court should direct a verdict as a matter of law only

when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom." *Sundeen v. Lehenbauer*, 229 Neb. 727, 728, 428 N.W.2d 629, 630 (1988). The trial court granted Robert Youngs' motion for directed verdict because reasonable minds could only conclude that his negligence was not gross. He knew of the danger caused by the tractor-trailer only immediately prior to impact—there was no evidence that he knew of any imminent danger and yet persisted negligently.

The plaintiff has also objected to the trial court's admission of certain evidence. We find no error in the admission of evidence in this case.

Finding no error in the rulings of the trial court, we affirm the decision.

AFFIRMED.

GRANT, J., not participating.