Dorothy **PEREZ**, Appellant,

v.

**WEINGARTEN REALTY INVESTORS, WRI/Palans Venture, Seymour Palans, and SPL, Inc., Appellees.**

No. 04–93–00668–CV.

Court of Appeals of Texas, San Antonio.

July 13, 1994.

James R. Warncke, Kevin B. Miller, Warncke, Miller & Greer, L.L.P., San Antonio, for appellant.

Edward C. Mainz, Jr., Thornton, Summers, Biechlin, Dunham & Brown, San Antonio, for appellees.

Before BUTTS, PEEPLES and HARDBERGER, JJ.

## OPINION

HARDBERGER, Justice.

This is a premises liability case in which Dorothy Perez was raped in her apartment by another tenant, Carlos Garcia. Perez sued the owners of the apartment complex, WRI/Palans Venture. In addition, Perez sued Seymour Palans, Weingarten Realty and SPL, Inc. The trial court submitted a negligence issue against SPL, Inc. only. The jury found that SPL, Inc. was guilty of no negligence, and therefore Perez lost the case. She now appeals.

Perez contends that the trial court erred (1) in refusing to submit her DTPA cluster of questions, (2) in refusing to submit a negligence question concerning Defendants other than SPL, Inc., and (3) by including instructions on sole proximate cause and new and intervening cause in the court's charge. We affirm the judgment.

### Facts

Perez had been living at the Summerplace Apartments about three months when she was raped. She had been told by Summerplace that a security man lived in the apartments and she was given a security telephone number and a handbook. The handbook said there were both local uniformed

police and non-uniformed guards that worked there. She was also given a telephone beeper number to get help. On the night of her rape, there was evidence that several of the security safeguards did not exist despite the earlier assurances.

In the early morning hours of December 16, 1989, Perez heard an intruder in her apartment. She asked who it was, but the man ran away without being identified. Perez then tried the security beeper number three times without results. She then called the twenty-four hour number and got an answering service, who said there was no security around, but they would call 911.

The rapist, Carlos Garcia, knocked on Perez' door before the police arrived. He falsely said he was the apartment's maintenance man, and asked for entry. Perez did not let him in, but after the police took their report and left Garcia came back. He was there, he lied, to take a report for the apartment house and check her windows. She then let him in and he raped her. In her struggle to get the assailant's gun she was shot. Garcia has been caught, convicted and is serving time for the rape. There were no security guards on duty at the time of the rape.

Summerplace Apartments is owned by the joint venture, WRI/Palans Venture, which is owned 50% by Seymour Palans and 50% by Weingarten Realty Investors, a Real Estate Investment Trust. Seymour Palans owns 50% of SPL, Inc., the management company, and his two sons own the rest of the corporation.

### DTPA and Negligence Issues (First and Second Points of Error)

In her first two points of error, Perez complains that the trial court erred in failing to submit her DTPA ground of recovery and her negligence ground of recovery against Defendants WRI/Palans Venture, Weingarten Realty Investors and Seymour Palans. Perez contends that she was entitled to submission of these requested questions because they were raised by the pleadings and the evidence. Perez requested the submission of her DTPA ground of recovery in a group of six questions. The requested DTPA questions and the requested negligence question

were all predicated upon findings against "the ownership of Summerplace Apartments, acting through any of its servants, agents or employees."

■ We must first decide whether Perez tendered to the court substantially correct questions concerning her DTPA theory and negligence theory. Failure to submit an issue cannot be a ground for reversal unless the party with the burden of proof has requested the issue in "substantially correct wording." Tex.R.Civ.P. 278. There is no absolute test for determining when a requested issue is "substantially correct." However, "substantially correct" has been defined as an issue that is "in substance and in the main correct, *and that is not affirmatively incorrect.*" *Placencio v. Allied Indus. Int'l, Inc.,* 724 S.W.2d 20, 21 (Tex.1987). A request is not substantially correct if it contains a term that requires a definition but the party fails to tender the definition. *Select Ins. Co. v. Boucher,* 561 S.W.2d 474, 479 (Tex.1978). Jury issues which are too vague are not substantially correct. *See Ornelas v. Moore Service Bus Lines,* 410 S.W.2d 919, 923 (Tex.Civ.App.—El Paso 1966, writ ref'd n.r.e.).

■ Perez, in her requested DTPA cluster, asked if "the ownership of Summerplace," acting through its "employees, agents or servants", did various acts of wrongdoing. This requested issue is not adequate. First, Summerplace Apartments was not a named defendant in the lawsuit. The defendants in this lawsuit were WRI/Palans Venture, Seymour Palans, Weingarten Realty and SPL, Inc. "Ownership" was not defined nor were "employees, agents or servants" identified. All of the defendants were lumped together and the jury was left to speculate as to whose conduct was inquired about.

The fundamental problem with Perez' requested DTPA issues can be viewed from a different perspective. Assuming the trial court had submitted the issues in the form suggested by Perez and the jury had answered affirmatively, whom would the judgment be against? The judgment must conform to the verdict. Tex.R.Civ.P. 301. Presumably, the judgment would be against the

"owners of Summerplace Apartments." However, this would create a conflict with TEX.R.CIV.P. 306 which provides that "the entry of the judgment shall contain the full names of the parties, as stated in the pleadings, for whom and against whom the Judgment is rendered." Does the trial court conform the judgment to the pleadings or the verdict? Another practical problem would be created by Perez' proposed questions. Presuming an affirmative jury finding, if the court enters judgment against "the ownership of Summerplace Apartments," against whom does the sheriff execute the judgment?

For these reasons, we hold that Perez' DTPA cluster of questions was not substantially correct as tendered.

■ Perez' requested negligence issues were defective for the same reasons as her DTPA questions. Perez used the same phrase "ownership of Summerplace Apartments" acting through its "servants, agents or employees." There is no reference to the specific defendants named in the lawsuit. There is no definition of the ownership of Summerplace Apartments and the jury is again left to speculate on whose conduct it is being asked to judge.

■ In addition to the foregoing, requested question number two, the percentage of responsibility question, was not in substantially correct form. Question number two, as tendered by Perez, asked the jury to find a percentage of responsibility for "the ownership of Summerplace Apartments acting through any of its employees, agents or servants." Perez attempted to lump all of the defendants into a single question and thus failed to request an issue asking the jury to find a percentage of responsibility for each defendant and settling person as required under Texas' comparative negligence law. TEX.CIV.PRAC. & REM.CODE, § 33.003 (Vernon 1986).

A substantially correct negligence question would have inquired about the negligence of each specific defendant, as named in the pleadings, for which there was some evidence of negligence. Furthermore, a substantially correct percentage of responsibility question would have asked the jury to place the percentage on each specific defendant found to be responsible. Perez failed to do this in her requested negligence questions.

Perez argues that her proposed questions were substantially correct because the ownership of Summerplace Apartments was not in dispute. According to Perez, there was no question that WRI/Palans Venture was the owner of Summerplace Apartments. Therefore, Perez says, the requested issues were tendered in substantially correct form. The problem with this argument is that there were fact issues raised concerning which defendant controlled the premises and was responsible for security. Perez maintains that Defendant Seymour Palans was responsible for management of Summerplace Apartments. Appellees argue that Defendant SPL, Inc. was the management company responsible for security at the apartments. There is also disagreement concerning which individual or entity employed the onsite manager of the apartments. Again, Perez maintains that Seymour Palans was the actual employer while the defendants argue that SPL, Inc. was the employer.

From a trial perspective multiple defendants that own a single entity present a difficult submission problem. This is further complicated when much of the trial language simply refers to a nonlegal entity such as "Summerplace Apartments." Perez' requested jury questions attempted to lump all of the defendants together: "ownership of Summerplace Apartments acting through its employees, agents or servants." By phrasing the requested questions in this manner, Perez achieved simplicity at the expense of specificity. There is something to be said for this effort and this Court is not saying it is always incorrect to do so. If there is no dispute as to which of the named defendants are responsible for the negligent act, or if there is no dispute that all are responsible for the negligent act, a single generic submission may be proper with an appropriate contribution percentage question. It would be improper in this case as there was a fact issue raised as to who had the responsibility for providing the security and who should properly get the blame for not doing so. *See*

*Alvarez v. Missouri–Kansas–Texas Railroad Co.*, 683 S.W.2d 375, 377 (Tex.1984).

■ When there is such a fact issue raised, there is no choice but to submit the question as to each defendant separately. This is more cumbersome, but must be done. A generic finding of negligence results in a judgment that cannot be written in an enforceable manner. *See J & C Drilling Co. v. Salaiz,* 866 S.W.2d 632, 640 (Tex.App.—San Antonio 1993, no writ). If the jury finds negligence and all the parties are submitted, it is likely that they will also be able to place the blame on one or more specific defendants.

■ Therefore, the trial court did not err in refusing to submit Perez' requested cluster of both DTPA and negligence questions. They were not tendered in substantially correct form. TEX.R.CIV.P. 278. If one of a cluster of tendered questions is not substantially correct, the trial court does not err in refusing to submit the entire tendered cluster. *Shwiff v. Priest,* 650 S.W.2d 894, 901 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Perez' points of error one and two are overruled.

### *Inferential Rebuttal Instructions (Third Point of Error)*

In point of error number three Perez complains that the trial court committed reversible error in submitting to the jury in its charge definitions of "sole proximate cause" and "new and intervening cause." Perez objects to these instructions on the ground that they both are comments on the weight of the evidence. Perez contends that there is no evidence to support submission of both instructions. According to Perez, the rape by Carlos Garcia is the very act that the Defendants were charged with negligently failing to prevent. In other words, Garcia's act was not independent of the Defendants' alleged negligence.

This is an appealing argument and there is truth in it. Several learned commentators have taken the position that inferential rebuttal instructions are as poisonous as inferential rebuttal questions which are no longer allowed.

As Justice Kilgarlin wrote:

Rule 277 confines inferential rebuttal issues to the instructions and definitions portion of the charge. Those issues which negate a plaintiff's cause of action are no longer submitted as questions. A better approach may be to eliminate inferential rebuttal issues altogether. Instructing the jury concerning a particular defensive theory is undoubtedly a comment on the weight of the evidence, as it cues the jury that the plaintiff *must* lose if the defendant's version of the events is correct. Since both case law and the rules prohibit direct comments on the weight of the evidence, it is somewhat paradoxical to allow instructions highlighting one side's story.

William W. Kilgarlin, George (Tex) Quesada & Robin Russell, *Practicing Law in the "New Age": The 1988 Amendments to the Texas Rules of Civil Procedure,* 19 TEX.TECH. L.REV. 881, 915 (1988).

Intellectually, it is hard to justify why an inferential rebuttal question is bad, but an inferential rebuttal instruction is good. *Yarborough v. Berner,* 467 S.W.2d 188 (Tex. 1971), prohibited submission of inferential rebuttal issues on unavoidable accident and sudden emergency. In 1973, by amendment to rule 277, the Texas Supreme Court eliminated inferential rebuttal issues altogether. This change eliminated the vexing problem of conflicting answers, but inferential rebuttal instructions remained an unwanted vestige of the past. Several states have eliminated inferential rebuttal instructions. *See, e.g., Butigan v. Yellow Cab Co.,* 49 Cal.2d 652, 320 P.2d 500 (1958) (eliminating unavoidable accident instruction); *Knapp v. Stanford,* 392 So.2d 196 (Miss.1980) (sudden emergency instruction abolished); *Cowell v. Thompson,* 713 S.W.2d 52 (Mo.App.1986) (emergency instructions no longer permitted); *McClymont v. Morgan,* 238 Neb. 390, 470 N.W.2d 768 (1991) (giving of sudden emergency instruction not warranted in negligence actions). The vice in inferential rebuttal instructions is they may unfairly emphasize the defendant's evidence.

This Court, however, is an intermediate court, whose job is to interpret the existing law and follow the Supreme Court dictate on such matters. The present law is clear, "sole proximate cause" and "new and independent cause" are inferential rebuttal defenses which may be submitted to the jury as instructions but not questions. *Lemos v. Montez,* 680 S.W.2d 798 (Tex.1984); *American Jet, Inc. v. Leyendecker,* 683 S.W.2d 121, 126 (Tex.App.—San Antonio 1984, no writ); TEX.R.CIV.P. 277. An instruction is proper if it finds support in any of the evidence or the inferences which might be drawn from it, and if the instruction might be of some aid or assistance to the jury in answering the question submitted. *Eoff v. Hal & Charlie Peterson Foundation,* 811 S.W.2d 187, 192 (Tex. App.—San Antonio 1991, no writ). Abuse of discretion is the standard of review. *Green Tree Acceptance, Inc. v. Combs,* 745 S.W.2d 87, 89 (Tex.App.—San Antonio 1988, writ denied).

Sole proximate cause is based upon the conduct of a third party and is a viable defense in negligence cases. *Herrera v. Balmorhea Feeders, Inc.,* 539 S.W.2d 84, 86 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.). The term "new and independent cause" is "the act or omission of a separate and independent agency, which destroys the causal connection between the negligent act or omission of the defendant and the injury complained of, and thereby becomes, in itself, the immediate cause of such injury." *Phoenix Refining Co. v. Tips,* 125 Tex. 69, 81 S.W.2d 60, 61 (1935); *See also Eoff,* 811 S.W.2d at 192.

It is undisputed that the Defendants raised the issues of "sole proximate cause" and "new and independent cause" in their pleadings. The Texas Pattern Jury Charges suggest that when there is evidence of "sole proximate cause" and "new and independent cause" these instructions should be given. *See* 3 STATE BAR OF TEXAS, PATTERN JURY CHARGES PJC 50.05, 65.04 (1990). Existing case law agrees. *See Tarry Warehouse & Storage Co. v. Duvall,* 131 Tex. 466, 115 S.W.2d 401, 405 (1938); *American Jet, Inc. v. Leyendecker,* 683 S.W.2d 121, 126 (Tex. App.—San Antonio 1984, no writ). There was some evidence warranting the court's instruction on both defenses.

Under existing law, the trial court was not in error in giving these inferential rebuttal instructions. The trial court has considerable discretion in submitting explanatory instructions and definitions; that is, the trial court has considerably more discretion when submitting instructions than it has in submitting jury questions. *Berry Property Management v. Bliskey,* 850 S.W.2d 644, 661 (Tex.App.—Corpus Christi 1993, writ dism'd); *Eoff,* 811 S.W.2d at 192; *Wisenbarger v. Gonzalez Warm Springs Hosp. Inc.,* 789 S.W.2d 688, 694 (Tex.App.—Corpus Christi 1990, writ denied).

In *Bliskey,* the court approved of a "sole proximate cause" instruction but also approved denying a "new and independent cause" instruction. *Bliskey,* as in the instant case, involved a criminal's conduct in conjunction with the defendant's conduct in a premises security case. Obviously, different trial courts have handled these requested instructions differently. It is not the place of this court to substitute our judgment for that of the trial court, but rather, to decide if the trial court's actions in this case were arbitrary or unreasonable. *Bliskey,* 850 S.W.2d at 662; *Multi–Moto v. ITT Commercial Finance,* 806 S.W.2d 560, 569–70 (Tex.App.—Dallas 1990, writ denied). We hold they were not.

Perez directs this court's attention to *First International Bank v. Roper Corp.,* 686 S.W.2d 602 (Tex.1985), as supporting her contention that it was error for the trial court to submit a sole cause instruction in this case. *Roper* was a strict liability products case. *Roper* did not involve negligence claims. In a products liability case the questions are "was there a defect, did the defect cause damage, and what are the damages." *Id.* at 605. The Supreme Court stated that in a products liability case a third party's negligence is an extraneous matter. *Id. Roper* thus cannot support Perez' contention that in a premises security case, which is grounded in negligence, it is reversible error

to submit a sole proximate cause instruction. Perez' third point of error is overruled.

The judgment of the trial court is affirmed.

BUTTS, Justice, concurring.

I concur in the judgment. In fact, on this all the members of the panel agree. The debate between J. Hardberger, the author of the opinion, and J. Peeples is one that is quietly ongoing among the members of the bar. And while it is intellectually an interesting topic, and both proponents make telling arguments, it has no effect on the outcome of this case.

Rule 277 of the Texas Rules of Civil Procedure prohibits submission of inferential rebuttal issues to a jury, but it expressly directs that proper inferential rebuttal matters may be submitted. "Inferential rebuttal questions shall not be submitted in the charge. The placing of the burden of proof may be accomplished by instructions rather than by inclusion in the question." TEX. R.CIV.P. 277. The obvious purpose of the present rule is to avoid conflicting jury answers but to permit affirmative presentation to the jury of negating factors.

It is noteworthy that several such rebuttal matters have gone by the wayside, dying a natural death. These include imminent peril, last clear chance, and open and obvious. I suspect that others will follow. However, this intermediate court has no power to abolish inferential rebuttal instructions in the face of the rule.

If inferential rebuttal instructions aid the jury to render a verdict, assuming no impermissible comment on the weight of the evidence which aims the jury to a certain result, then under the present Texas law, they may be submitted. Objections that an inferential instruction does not assist the jury, is confusing, is not relevant to the jury question submitted, has not been pleaded or proved, or is an improper comment on the evidence are often proper objections.

As pointed out by J. Hardberger, certain inferential rebuttal instructions are contained in the Texas Pattern Jury Charges. These are regularly submitted in jury charges as correct.

The supreme court considers amendments to the Texas rules of civil procedure on a regular basis. It may be assumed that the argument for abolition of inferential rebuttal instructions which would negate an element of the opposing party's cause of action or defense has been, and will be, presented.

The argument is not without merit which emphasizes that the party with the burden of proof must prove the required elements, and the inferential rebuttal instructions are unnecessary to rebut or negate that burden. In other words, since plaintiff must prove "X" as an element of his cause of action, then defendant is not entitled to an instruction, in effect, that plaintiff has not proved "X" if "Y" has been proved. It is contended that the party with the burden must present proof, and if he fails, then jury voir dire, evidence at trial, and jury argument about "Y" will sufficiently permit the jury to find that plaintiff has not sustained his burden of proof.

With worthy advocates advancing abolitionist and retention positions to the supreme court when it comes time for consideration of amendments to the rules of procedure, it is that court's task to pass on the matter. At this time, we must surmise the supreme court has declined to abolish inferential rebuttal instructions although the amendment of 1988 rewrote rule 277.

Therefore, I join the judgment with this concurrence.

PEEPLES, Justice, concurring.

I join the panel's judgment and most of Justice Hardberger's opinion. But I respectfully disagree with his criticism of this state's practice of instructing juries about inferential rebuttal matters that are raised by the evidence. In particular, I take issue with the suggestions that they comment on the weight of the evidence, improperly emphasize the defendant's theory of the case, and serve no purpose.

Our system trusts juries by putting tremendous power in their hands. We give them considerable discretion to assess credibility, find facts, and determine damages. The evidence seldom raises sole cause. But when it does, I think we can trust jurors with

an instruction that tells them this simple truism: If a nonparty caused the occurrence 100 percent, then it necessarily follows that none of the parties could have caused it in whole or in part. If juries are not intellectually capable of understanding an inferential rebuttal instruction, we need to ask whether we have overestimated their capacity for exercising the vast power we have given them in deciding the controlling issues.

Inferential rebuttal instructions serve the valid purpose of helping juries focus on the parties' contentions. If the jury believes that a nonparty's acts or omissions were the sole cause of an incident, isn't the jury supposed to find that the defendant's conduct did not cause it?

It is said that inferential rebuttal instructions emphasize the defendant's theory of the case. But every instruction emphasizes something about the case. And most of the other parts of the charge emphasize the plaintiff's theory of the case—negligence and proximate cause. It seems to me good practice to explain to the jury each litigant's theory of the case within our existing questions and instructions and then to let the jury choose which theory to accept.

I acknowledge that existing instructions could be worded more simply. But if the complaint is that present instructions are esoteric or confusing, the answer is to improve their wording, not to prohibit them completely.

Criminal juries are trusted with comparable instructions. "It is well established that a defendant is entitled to an *affirmative* submission of every defensive theory raised by the evidence. [citations omitted]. This rule applies with equal force to defensive theories regarding the cause of death in murder prosecutions." *Hill v. State*, 585 S.W.2d 713, 714 (Tex.Crim.App.1979) (emphasis in original) (criminal defendant entitled to instruction submitting defensive theory that victim died of natural causes, and was not choked and beaten). In other words, though the state must prove as part of its case in chief that the defendant murdered the decedent, our law allows an instruction telling the jury that if they believe the decedent died of natural causes they should acquit. That is an inferential rebuttal instruction.

Similar instructions may be given on the inferential rebuttal defense of alibi. *See Miller v. State*, 660 S.W.2d 95, 96–97 (Tex.Crim. App.1983) (affirmative instruction on alibi is proper). That is, even though the state may have to prove as part of its case in chief that the defendant was present at a crime scene, our law allows an instruction that if the jury believes the defendant's alibi, it should acquit. That is an inferential rebuttal instruction.

Why should we allow trial courts to instruct juries about a criminal defendant's defensive theory but forbid them to do the same thing in a civil case? It seems rational to allow instructions pointing out that if a certain version of events is accepted, the logical consequence is a defense verdict. The instructions promote truthful, rational decisionmaking by juries, which should be our goal.

Our law has work enough to do without attempting to change settled instructions, especially when they are not causing problems but instead are serving the worthwhile goal of clarifying the parties' contentions for the jury.