Allied Signal v. Moran














NUMBER 13-00-00537-CV




COURT OF APPEALS




THIRTEENTH DISTRICT OF TEXAS




CORPUS CHRISTI - EDINBURG


 

ALLIEDSIGNAL, INC. AND

DAIMLERCHRYSLER CORPORATION, Appellants,



v.




YVONNE MORAN, INDIVIDUALLY,

AS NEXT FRIEND OF AUTUMN RHAE MORAN,

AND AS PERSONAL REPRESENTATIVE OF

THE ESTATE OF BART MORAN, DECEASED, Appellee.

 

On appeal from the County Court at Law Number 1


of Nueces County, Texas.


 

O P I N I O N




Before Justices Hinojosa, Castillo, and Dorsey (1)


Opinion by Justice Hinojosa




 This case arose out of a fatal automobile collision. Appellee, Yvonne Moran ("Moran"), individually, as next friend of
Autumn Rhae Moran, and as personal representative of the Estate of Bart Moran, deceased, sued Luvh Rakhe (2) for
negligence and appellants, AlliedSignal, Inc. ("AlliedSignal") and DaimlerChrysler Corporation ("Chrysler"), for products
liability. Moran claimed that the seat belt her husband, Bart Moran ("Bart"), was wearing at the time of the collision was
defective, thus allowing him to be ejected from the vehicle and causing his death. A jury found the seat belt buckle was
defective and found damages in the amount of $5,088,399.93. The trial court rendered judgment against appellants, jointly
and severally, for the amount of damages found by the jury. We reverse and remand.

A. Issues Presented


 In three issues, Chrysler complains: (1) there is no evidence, or alternatively insufficient evidence, that the alleged defect
in the seat belt buckle caused the injuries to Bart; (2) the trial court committed error by failing to charge the jury to allocate
responsibility between appellants; and (3) the trial court abused its discretion by failing to admit prior bad-act evidence and
in admitting evidence of customer complaints. In six issues, AlliedSignal contends: (1) the trial court erred in rendering
judgment against it without submitting any jury questions concerning AlliedSignal; (2) the trial court erred in the
submission of its charge and the rendition of its judgment by (a) failing to submit each individual defendant's percentage of
responsibility and (b) rendering a joint and several liability judgment against appellants; (3) the trial court erred in
overruling AlliedSignal's challenge to appellee's expert witness; (4) there is no evidence, or alternatively insufficient
evidence, that the seat belt buckle was either defective or a producing cause of Bart's injuries; (5) the trial court erred in
excluding relevant and probative evidence; and (6) the trial court erred in its award of prejudgment interest against
AlliedSignal.

B. Background

 On December 17, 1996, Bart Moran was traveling alone in his 1997 Dodge Caravan minivan when a vehicle driven by
Luvh Rakhe, a 17-year-old high school student, collided with the minivan and caused it to roll over. Bart was ejected from
the vehicle and fatally injured.

 Moran sued appellants for products liability. At trial, Moran contended the seat belt Bart was wearing was defective
because it was susceptible to inadvertent release, the seat belt inadvertently released in the accident, and this defect caused
Bart's death. Moran asserted the seat belt released inadvertently when Bart's hand or arm came into contact with the seat
belt buckle during the roll-over.

 AlliedSignal and Chrysler offered conflicting testimony as to which company was ultimately responsible for the final
design of the seat belt buckle. AlliedSignal presented evidence that a Chysler supervisor created the buckle design from a
clay model and that Chrysler made the final decision regarding whether the buckle conformed to National Highway Traffic
Safety Administration guidelines. Chrysler presented evidence that AlliedSignal was responsible for the complete design
work and testing of the buckle.

 The trial court submitted its charge to the jury in terms of the subject product, "the seat belt buckle," and not the
individually named defendants. The jury found that: (1) Bart was wearing his seat belt immediately before the accident
occurred; (2) the seat belt buckle was defectively designed; and (3) the design defect was a producing cause of Bart's death. 
The jury found the following percentages of causation:

 (1) Luvh Rakhe - 1%; 

 (2) "the seat belt buckle" - 99%; and 

 (3) Bart Moran - 0%.

C. Percentage of Responsibility


 Both appellants present issues relating to the trial court's jury charge. In its second issue, AlliedSignal contends the trial
court erred in the submission of its charge and rendition of its judgment by (a) failing to submit each individual defendant's
percentage of responsibility as required by section 33.003 of the civil practice and remedies code, and (b) rendering a joint
and several liability judgment against appellants in violation of section 33.013(b). Tex. Civ. Prac. & Rem Code. Ann. §§
33.003, 33.013(b) (Vernon 1997). In its second issue, Chrysler contends the trial court committed reversible error by
failing to charge the jury to allocate responsibility between appellants. Because the analysis is the same, we address these
issues together.

1. Standard of Review

 The resolution of these issues requires us to interpret sections 33.003 and 33.013(b) of the civil practice and remedies
code. Tex. Civ. Prac. & Rem. Code Ann. §§ 33.003, 33.013(b) (Vernon 1997). As a question of law for the court, we
review the interpretation of a statute de novo. See Mitchell Energy Corp. v. Ashworth, 943 S.W.2d 436, 437 (Tex. 1997);
Sugar Land Props. Inc. v. Becnel, 26 S.W.3d 113, 119 (Tex. App.-Houston [1st Dist.] 2000, no pet.); Gordon v. Western
Steel Co., 950 S.W.2d 743, 746 (Tex. App.-Corpus Christi 1997, pet. denied).

2. Statutory Construction


 We begin by looking at the language used by the legislature. Meritor Auto., Inc. v. Ruan Leasing Co., 44 S.W.3d 86, 89
(Tex. 2001). When a statute is clear and unambiguous, courts should not construe the statute to mean something other than
its plain words, (3) unless application of the literal language would produce an absurd result. In re Steiger, 55 S.W.3d 168,
171 (Tex. App.-Corpus Christi 2001, no pet.) (citing Fleming Foods of Tex., Inc. v. Rylander, 6 S.W.3d 278, 284 (Tex.
1999)). In such instances, courts need not resort to rules of construction or extrinsic aids to construe the statute, but should
give the statute its common meaning. St. Luke's Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex. 1997). We
presume every word or phrase included in the statute has a purpose and every word or phrase excluded was left out for a
purpose. Southwestern Bell Tel. Co. v. Pub. Util. Comm'n, 888 S.W.2d 921, 926 (Tex. App.-Austin 1994, writ denied)
(citing Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981)). The statute's intent should be considered as
a whole when construing its component parts. See Bridgestone/Firestone, Inc. v. Glyn-Jones, 878 S.W.2d 132, 133 (Tex.
1994). We also presume the legislature intended a "result feasible of execution" when enacting the statute. In re Missouri
Pac. R.R. Co., 998 S.W.2d 212, 216 (Tex. 1999).

 First, we determine whether section 33.003 of the civil practice and remedies code applies by looking to its plain and
common language. See C & H Nationwide, Inc. v. Thompson, 903 S.W.2d 315, 319-22 (Tex. 1994) (construing chapter 33
according to its plain and common meaning). Section 33.003 provides:

 The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, (4) stated in whole
numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for
which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous
product, by other conduct or activity that violates an applicable legal standard, or by any combination of these:

 


 each claimant;


 


 each defendant;


 


 each settling person; and


 


 each responsible third party who has been joined under Section 33.004.




Tex. Civ. Prac. & Rem. Code Ann. § 33.003 (Vernon 1997) (emphasis added). 

 After looking at the plain wording of the statute, we conclude that section 33.003 applies to the present product liability
action. (5) In 1995, the 74th legislature specifically amended the statute to include actions where harm was caused "by any
defective or unreasonably dangerous product." (6) See Tex. Civ. Prac. & Rem. Code Ann. § 33.003 (Vernon 1997). Having
established the statute's applicability, we now turn to its mandates.

 We generally construe the word "shall" as mandatory, unless legislative intent suggests otherwise. Albertson's, Inc. v.
Sinclair, 984 S.W.2d 958, 961 (Tex. 1999); see Tex. Gov't Code Ann. § 311.016 (Vernon 1998) (construing the word
"shall" as imposing a duty); cf. Univ. of Tex. at Arlington v. Bishop, 997 S.W.2d 350, 355 (Tex. App.-Fort Worth 1999, pet.
denied) (construing directive prefaced by "shall" language in statute to be mandatory). We conclude that section 33.003, by
using the word "shall," mandates the trier of fact to determine each defendant's percentage of responsibility. (7) 

 The task of apportioning responsibility under section 33.003 is inherently reserved to the fact finder. The jury is given
wide latitude in performing its duty as fact finder in allocating responsibility pursuant to section 33.003. N. Am. Van Lines,
Inc. v. Emmons, 50 S.W.3d 103, 126 (Tex. App.-Beaumont 2001, pet. denied).

 Appellants contend the trial court erred in asking the jury to determine the percentage of responsibility of "the seat belt
buckle." Appellants assert the trial court should have asked the jury to allocate percentages of responsibility for
AlliedSignal and Chrysler because there was conflicting evidence regarding which appellant designed the buckle. 

 The trial court's jury charge included the following question on proportionate responsibility:

The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of
causation attributable to a person, company, or product is not necessarily measured by the number of acts, omissions, or
product defects found. The percentage attributable to a person, company, or product need not be the same percentage
attributed to that person, that company, or that product in answering another question.



Question No. 4




For each person or product found by you to have caused the occurrence or Bart Moran's death, find the percentage caused
by -



 


 The seat belt buckle %


 


 Luvh Rakhe %


 


 Bart Moran %


 Total 100 %

Thus, the trial court submitted proportionate responsibility in terms of the subject product, "the seat belt buckle," not in
terms of each defendant, as mandated by section 33.003.

 Our holding should not be read to say that it is always error to submit the comparative responsibility question in terms of
the subject product. For example, in a case involving only one defendant, submission of the product alone would be
sufficient. See Dico Tire, Inc. v. Cisneros, 953 S.W.2d 776, 797 (Tex. App.-Corpus Christi 1997, pet. denied). Indeed,
section 33.003 does not provide a specific format for jury charge questions. See id. However, in a case where the facts are
disputed regarding the responsibility of multiple defendants for design of a product, we conclude that compliance with the
statute requires submission of separate percentages of responsibility for each defendant, not submission of the product
itself, which was neither a defendant, settling party, nor responsible third party. See Tex. Civ. Prac. & Rem. Code Ann. §
33.003 (Vernon 1997). We hold that the failure to submit each individual defendant's percentage of responsibility violates
section 33.003 of the civil practice and remedies code and is error. See In re Canales, 52 S.W.3d 698, 701 (Tex. 2001)
(trial court has no discretion in the interpretation of a statute).

 Appellee argues that in a products liability case, the focus is solely on the product. Appellee contends that no jury question
allocating responsibility between the appellants was required. She asserts that the only burden of proof on a plaintiff in a
product liability case is to show that (1) the defendant placed the defective product into the stream of commerce and (2) the
defective product was a producing cause of harm to the plaintiff. In support, she cites a case from this Court where we
distinguished between negligence claims based on conduct and strict liability claims based on products. In that case, we
stated: 

[w]hen a products liability action is submitted to the jury on a strict liability theory, the defendant is held liable based on
proof that it placed the product into the stream of commerce and upon further proof that the defective product was a
producing cause of the claimant's damages. This distinction is critical because strict liability claims are based on the
product.



Oasis Oil Corp. v. Koch Ref. Co., 60 S.W.3d 248, 253 (Tex. App.-Corpus Christi 2001, pet. denied). Appellee argues that
since appellants admitted placing the seat belt buckle into the stream of commerce, and the jury found that a defect in the
seat belt buckle was a producing cause of Bart's death, no comparative responsibility question was necessary.

 Appellee's argument is misplaced. Appellee is correct that in a products liability action, the focus is on the product. See
id. However, that focus is to establish a prima facie case for product liability. Appellee ignores the comparative
responsibility mandates of section 33.003. By its language, the legislature specifically intended section 33.003 to apply to
product liability cases. See Tex. Civ. Prac. & Rem. Code Ann. § 33.003 (Vernon 1997).

 Appellee further argues that no comparative responsibility question was required because of the language we used in Dico
Tire, Inc., 953 S.W.2d at 797. In that negligence and product liability case, Cisneros sued the tire manufacturer, Dico Tire,
Inc., after a tire he was repairing exploded, causing his injuries. Id. at 780. The trial court submitted the comparative
responsibility question as between Dico Tire, Inc., the tire in question, and the plaintiff. Id. at 796. The jury determined
the percentage of responsibility to be: Dico Tire, Inc. - 80%, the tire - 20%, and Cisneros - 0%. Id. at 797. In upholding
the submission of the jury question, we stated "[r]egardless of how the comparative responsibility questions might have
been worded in this case, the findings [establishing liability] and the evidence presented precluded any other apportionment
of responsibility but 100% for Dico." Id. We further said, "If this case had been grounded solely on pleadings of product
liability, the proper question could have inquired about the responsibility of the tire only." Id. 

 In Dico Tire, however, the manufacturer was the only defendant. In the present case, we have two defendants, and both
were found jointly and severally liable.

 There is a logical problem with holding multiple defendants jointly and severally liable without apportioning responsibility
between each defendant. Again, we begin with the language of the statute. Section 33.013(b) provides

Notwithstanding Subsection (a), each liable defendant is, in addition to his liability under Subsection (a), jointly and
severally liable for the damages recoverable by the claimant under Section 33.012 (8) with respect to a cause of action if the
percentage of responsibility attributed to the defendant isgreater than 50 percent.



Tex. Civ. Prac. & Rem. Code Ann. § 33.013(b) (Vernon 1997) (emphasis added).

 By the plain language of section 33.013(b), only one liable defendant may be held jointly and severally liable for the total
damages recoverable by the claimant because only one liable defendant may be assigned responsibility greater than fifty
percent. See Becnel, 26 S.W.3d at 120 (finding a liable defendant jointly and severally liable after its responsibility is
determined to be greater than fifty percent); see also C & H Nationwide, Inc., 903 S.W.2d at 321; Roberts v. Williamson,
52 S.W.3d 343, 353 (Tex. App.-Texarkana 2001, pet. granted) (recognizing the minimum statutory threshold for joint and
several liability). In the instant case, the trial court held both Chrysler and AlliedSignal jointly and severally liable for the
amount of damages awarded by the jury, together with prejudgment interest. We find no support for the trial court's action,
either in the language of the statute or in case law. As we interpret section 33.013(b), the imposition of joint and several
liability against both appellants is improper. 

 Under section 33.013(b), Chrysler and AlliedSignal cannot be jointly and severally liable because both cannot be more
than fifty percent liable. See Tex. Civ. Prac. & Rem. Code Ann. § 33.013(b) (Vernon 1997). We recently stated, "[a] fair
reading of the relevant statutory provisions precludes combining percentages for claimants to bar recovery, just as it bars
combining defendants' percentages to determine if joint and several liability is appropriate." Sanchez v. Brownsville Sports
Ctr., Inc., 51 S.W.3d 643, 656 (Tex. App.-Corpus Christi 2001, pet. granted, judgm't vacated w.r.m.).

 Reading sections 33.003 and 33.013(b) together demonstrates the logical problem in failing to determine the percentage of
responsibility between each defendant. Absent an allocation of responsibility among all parties, it would be impossible to
determine whether the claimant is barred from recovery, whether each party is properly being held liable only for his
percentage of responsibility, and whether joint and several liability applies. See Tex. Civ. Prac. & Rem. Code Ann. §§
33.001, 33.012, 33.013 (Vernon 1997); Union City Body Co. v. Ramirez, 911 S.W.2d 196, 207 (Tex. App-San Antonio
1995) (orig. proceeding) (Duncan, J. dissenting); Perez v. Weingarten Realty Investors, 881 S.W.2d 490, 494 (Tex.
App.-San Antonio 1994, writ denied) (finding appellant's proposed jury question grouping defendants together into single
question contrary to section 33.003); see also Becnel, 26 S.W.3d at 120 (recognizing importance of proper determination of
comparative responsibility to determine whether joint and several liability applies after defendant has received settlement
credit under section 33.012(b)).

 A similar situation existed in the Perez case. In that case, Perez sued the owners of her apartment complex for negligence
after she was raped in her apartment by a fellow tenant. Id. at 492. The trial court refused to submit her requested jury
questions couched in terms of "the ownership of [the apartment complex], acting through any of its servants, agents or
employees." Id. at 493. The apartments were owned by multiple entities, who were each individually named as defendants. 
Id. at 492-93. In affirming the decision of the trial court, the court of appeals pointed out that the apartment complex was
not a named defendant in the lawsuit, "ownership" was not defined in the jury charge, and all the defendants were lumped
together, leaving the jury to speculate as to whose conduct it was asked to judge. Id. at 493. The appellate court further
pointed out that the fundamental problem with such jury questions is that they prevent a judgment from conforming to the
verdict. Id. at 493-94; see Tex. R. Civ. P. 301 (judgment of the court shall conform to the verdict). If the trial court had
submitted the jury question about the "ownership of [the apartment complex]" and the jury found "the ownership"
responsible, the trial court would not have been able to render judgment against the responsible parties because the
judgment must "contain the full names of the parties, as stated in the pleadings, for and against whom the judgment is
rendered." Perez, 881 S.W.2d at 494; see Tex. R. Civ. P. 306.

 The same problem exists in this case. The "seat belt buckle" is not a named defendant in this case. With such a
submission, the trier of fact made no determination of proportionate responsibility between each of the defendants. Yet, the
trial court entered a joint and several liability judgment against both appellants, thus violating section 33.013(b) of the civil
practice and remedies code and rule 301 of the rules of civil procedure.

 The harm here is the failure to abide by the clear language of chapter 33 of the civil practice and remedies code and the
potential for unfairness to a liable defendant in being responsible for the liability assessed against other defendants. A
liable defendant is generally responsible only for the percentage of damages found by the trier of fact equal to that
defendant's percentage of responsibility with respect to those damages. Tex. Civ. Prac. & Rem. Code Ann. § 33.013(a)
(Vernon 1997). Here, the jury could have found either appellant less than fifty percent responsible, thus precluding that
party from joint and several liability. However, under the trial court's judgment, both appellants are required to pay for
damages assessed against the other appellant. 

 After reviewing the applicable statutes, we find the clear language of chapter 33 of the civil practice and remedies code to
be clear and unambiguous. Read together, sections 33.003 and 33.013(b) of the civil practice and remedies code preclude a
trial court from holding multiple parties jointly and severally liable when no allocation of responsibility has been assigned
to those parties individually. Because the trial court failed to comply with section 33.003 of the civil practice and remedies
code and held both appellants jointly and severally liable, we hold it committed reversible error.

 We sustain AlliedSignal's second issue and Chrysler's second issue. In light of our disposition of these issues, it is
unnecessary to address appellants' remaining issues. See Tex. R. App. P. 47.1.

 We reverse the trial court's judgment and remand this case to the trial court for a new trial.



 FEDERICO G. HINOJOSA

 Justice



Concurring opinion by Retired Justice Dorsey.


Opinion delivered and filed this the

27th day of August, 2003.



1. Retired Justice J. Bonner Dorsey, who concluded his term of office on December 31, 2002, was assigned to this Court
by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998) to
"complete the adjudication of any and all causes assigned to a panel of which [he was] a member" prior to his retirement.

2. Luvh Rakhe was the driver of the other vehicle involved in the collision. The jury found that the percentage of
causation attributable to Rakhe was one percent. The trial court rendered judgment against Rakhe in the amount of
$40,200.00, plus prejudgment and postjudgment interest. Rakhe did not appeal the trial court's judgment.

3. Sorokolit v. Rhodes, 889 S.W.2d 239, 241 (Tex. 1994).

4. "Percentage of responsibility" is defined as that percentage, stated in whole numbers, attributed by the trier of fact to
each claimant, each defendant, each settling person, or each responsible third party with respect to causing or contributing
to cause in any way, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other
conduct or activity violative of the applicable legal standard, or by any combination of the foregoing, the personal injury,
property damage, death, or other harm for which recovery of damages is sought. Tex. Civ. Prac. & Rem. Code Ann. §
33.011(4) (Vernon 1997).

5. Additionally, section 33.002 specifies the causes of action to which chapter 33 applies, including actions based on tort
where a defendant is found responsible for a percentage of the harm for which relief is sought. Tex. Civ. Prac. & Rem.
Code Ann. § 33.002 (Vernon Supp. 2003).

6. Prior to amendment, section 33.003 stated: "[t]he trier of fact, as to each cause of action asserted, shall determine the
percentage of responsibility with respect to: (1) each claimant; (2) each defendant; and (3) each settling person." Act of
June 16, 1987, 70th Leg., 1st C.S., ch. 2, §2.06, 1987 Tex. Gen. Laws 37, 41, amended by Act of May 18, 1995, 74th Leg.,
R.S., ch. 136, §1, 1995 Tex. Gen. Laws 971, 972. 

7. Similarly, Texas Rule of Civil Procedure 277 also mandates the trial court to submit a question or questions to the jury
for its determination of the percentage of causation attributable to each of the persons found culpable of the injury in
question. The rule provides:



 In any cause in which the jury is required to apportion the loss among the parties the court shall submit a question or
questions inquiring what percentage, if any, of the negligence or causation, as the case may be, that caused the occurrence
or injury in question is attributable to each of the persons found to have been culpable.



Tex. R. Civ. P. 277 (emphasis added). For ease of analysis, we will refer only to section 33.003.

8. Section 33.012, entitled "Amount of Recovery," pertains to the amount of damages recoverable by a claimant, taking
into consideration (a) claimant's percentage of responsibility, and (b) the amount of any settlements received by claimant. 
See Tex. Civ. Prac. & Rem. Code Ann. §33.012 (Vernon 1997).


*********************************************************************************************** 















NUMBER 13-00-00537-CV




COURT OF APPEALS




THIRTEENTH DISTRICT OF TEXAS




CORPUS CHRISTI - EDINBURG


 

ALLIEDSIGNAL, INC. AND

DAIMLERCHRYSLER CORPORATION, Appellants,



v.




YVONNE MORAN, INDIVIDUALLY,

AS NEXT FRIEND OF AUTUMN RHAE MORAN,

AND AS PERSONAL REPRESENTATIVE OF

THE ESTATE OF BART MORAN, DECEASED, Appellee.

 

On appeal from the County Court at Law Number 1


of Nueces County, Texas.


 

CONCURRING OPINION




Before Justices Hinojosa, Castillo, and Dorsey (1)


Opinion by Justice Dorsey






 I join the court's opinion holding that Section 33.003, Texas Civil Practice and Remedies Code, mandates the court submit
the relative responsibility of both appellants to the jury for determination. There is no way to avoid that conclusion from
the legislative language. I write to discuss how this turns on its head traditional product liability theory founded on a
defectively designed product.

 The Texas Supreme Court adopted section 402A of the Restatement of Torts, Second, in McKisson v. Sales Affiliates,
Inc. (2), in 1967, and in so doing imposed strict liability on the seller of a defective product; that is, if the product was
defective and it caused harm, all sellers of the product were liable regardless of fault. Recovery was not limited to the
purchaser of the product: "A manufacturer who places in commerce a product rendered dangerous to life or limb by reason
of some defect is strictly liable in tort to one who sustains injury because of the defective condition." (3)

 The focus was on the product itself and whether it was defectively manufactured, designed, or marketed. The distinctive
features of the cause of action were two: that it resulted in strict liability and that all who put the product into commerce
were jointly and severally liable for damages it caused. The legislature provided indemnification from the manufacturer to
the innocent seller who did nothing more than sell the product without modification,. Tex. Civ. Pract. & Rem.Code Ann.
Section 82.002.

 Now, however, Section 33.003 mandates that "responsibility" for the defect be determined and allocated among parties as
well as non-parties and that liability for damages be apportioned according to fault, eliminating joint and several liability
except under very limited - perhaps impossible - circumstances. By "outsourcing" the manufacture or design of small parts
that are later integrated into the finished product, responsibility can be widespread among many small providers, many of
whom may be not be financially sound so as to pay the damages caused. If the responsible party cannot pay damages, the
injured consumer bears the loss. Thus, the risk of injury caused by the defective product is effectively shifted from the
manufacturer and distributor to the consumer. (4) 

 This constitutes a great retreat from the historic movement of the law to protect innocent users from defectively designed
products. It is a bad public policy, but I concur in the opinion and judgment of the court because I see no alternative from
the statutory language.



 J. BONNER DORSEY

 Retired Justice



Opinion delivered and filed this

27th day of August, 2003 

1. Retired Justice J. Bonner Dorsey, who concluded his term of office on December 31, 2002, was assigned to this Court
by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998) to
"complete the adjudication of any and all causes assigned to a panel of which [he was] a member" prior to his retirement.

2. McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex. 1967).

3. Darryl v. Ford Motor Co., 440 S.W.2d 630, 633 (Tex. 1969).

4. Clancy, James T., "Reform of Texas Joint and Several Liability: The Changes and Their Effect", The Advocate, Vol. 15,
no. 1, p. 4 (Spring 1996).